# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TRAVIS J. HEFLEY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | 04 C 8032 |
| | ) | |
| VILLAGE OF CALUMET PARK and | ) | |
| CHIEF MARK DAVIS, | ) | |
|     Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Travis Hefley, who is white, was a part-time police officer for the Village of Calumet Park. The Village terminated Hefley, contending that he had failed to pass the police department's annual firearm qualification test and thus was unqualified to possess a gun. Hefley unsurprisingly sees things different. According to Hefley, who is proceeding pro se, he was a victim of reverse discrimination because minority officers received preferential treatment from the Village. Hefley contends that the Village and its Chief, Mark Davis, violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*., and the Civil Rights Act of 1991, 42 U.S.C. §1981a. The parties' cross-motions for summary judgment and several motions to strike are before the court. For the following reasons, the defendants' motion for summary judgment is granted, Hefley's motion for summary judgment is denied, and the motions to strike are stricken as moot.

**I.     Background**

The basic facts are straightforward: Hefley was a part-time officer with the Village of Calumet Park. The Rules and Regulations of the Calumet Park Police Department require all officers to qualify their shooting proficiency at least once each calendar year. After Hefley failed

to pass the firearms qualifications test in 2004, and failed to pass when given a second chance to take the test, the Village terminated him. Curtis Smith, a minority part-time officer, also did not pass the 2004 examination or the re-examination, and was also terminated. Smith eventually passed the firearms examination and was rehired. Hefley has not pointed to any evidence showing that he reapplied for employment as a part-time officer or that he ever passed the firearms examination.

## II. Discussion

### A. Standard on a Motion for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, a court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Valenti v. Qualex, Inc.*, 970 F.2d at 365; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

The determination as to what facts are "material" in employment discrimination cases depends upon the substantive law of employment discrimination, and the burden of proof applicable under the law. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (7th Cir. 1988). When considering motions for summary judgment in discrimination cases, the court

applies these criteria with added rigor because the matters of intent and credibility are crucial issues. *See Sarsha v. Sears, Roebuck, & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

B.     **Reverse Discrimination**

To establish a prima facie case of reverse discrimination, Hefley must show: (1) "background circumstances" that support an inference that the Village is "one of those unusual employers who discriminates against the majority;" (2) that he was meeting his employer's legitimate expectations at the time of his termination; (3) that he suffered an adverse employment action; and (4) that similarly situated employees outside of the protected class, *i.e.* non-whites, were treated more favorably. *Mills v. HealthCare Serv. Corp.*, 171 F.3d 450, 455-457 (7th Cir. 1999); *Phelan v. City of Chicago*, 226 F.Supp.2d 914, 921 (N.D. Ill. 2002). The court's analysis begins and ends with its finding that Hefley failed to point to evidence establishing that he was meeting his employer's legitimate expectations or that the defendants used different standards to evaluate white and non-white employees.

In this case, Hefley blends these two elements together as he concedes that he was not qualified because he failed to pass a firearms test as required by state law. *See* 50 ILCS § 710/2.5 (under the Illinois Peace Officer Firearm Training Act, all peace officers must satisfactorily complete an annual range qualification). According to Hefley, Smith (who is a minority) is similarly situated as he and Hefley were both part-time Village of Calumet Park police officers who failed their firearms tests and were terminated. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006) ("Employees are similarly situated if they are directly comparable in all material respects"). He then notes that the Village eventually reinstated Smith and contends that it should also have reinstated him.

It is true that Hefley and Smith were at one point facing a similar challenge, as they both flunked the annual firearms qualification test on their first try and second tries. However, Smith eventually passed, and it is undisputed that Hefley never did so. Moreover, Hefley has not pointed to evidence showing that any specific officer failed to pass the firearm qualifications test and nevertheless remained employed by the Village. Thus, no evidence supports Hefley's claim that the Village treated him differently than a similarly situated minority officer. Accordingly, Hefley has failed to establish a prima facie case, so the court need not reach the defendants' remaining arguments.

In the interests of completeness, however, the court will briefly address Hefley's other arguments. First, Hefley contends that under 65 ILCS 5/10-2.1, *et seq.*, the Village was required to provide written notice and an opportunity to be heard before it could terminate him. The cited statute is part of the Illinois Municipal Code and is entitled "Board of Fire and Police Commissioners." It explicitly applies "only to full-time fireman and full-time policemen of a regularly constituted fire or police department and not to any other personnel of any kind or description." 65 ILCS 5/10-2.1-26. It is undisputed that Hefley was a part time officer, so this section is inapplicable.

Second, Hefley directs the court's attention to 65 ILCS § 5/3.1-30-21 and claims that this section prevented the Village from firing him. This section provides that:

> Part-time police. A municipality may appoint, discipline, and discharge part-time police officers. A municipality that employs part-time police officers shall, by ordinance, establish hiring standards for part-time police officers and shall submit those standards to the Illinois Law Enforcement Training Standards Board.

> Part-time police officers shall be members of the regular police department, except for pension purposes. Part-time police officers shall not be assigned under any circumstances to supervise or direct full-time police officers of a police department. Part-time police officers shall not be used as permanent replacements for permanent full-time police officers.
>
> Part-time police officers shall be trained under the Intergovernmental Law Enforcement Officer's In-Service Training Act in accordance with the procedures for part-time police officers established by the Illinois Law Enforcement Training Standards Board. A part-time police officer hired after January 1, 1996 who has not yet received certification under Section 8.2 of the Illinois Police Training Act shall be directly supervised.

65 ILCS § 5/3.1-30-21 (internal citations omitted). The plain language of this statute does not help Hefley. Indeed, it supports the Village's position, as it allows the Village to "discipline and discharge part-time police officers."

Third, Hefley contends that Davis failed to follow Article XIV of the Calumet Park Police Department Rules in connection with Hefley's problems with the firearms qualification test. See Plaintiff's Exhibit 6. Article XIV, entitled "Penalties" states that the police department may take disciplinary action. including dismissal, against members who violate the "duties, responsibilities, regulations, and rules of conduct" in the Calumet Park Police Department Rules. Article IX, entitled "Weapons," requires officers to "qualify their shooting proficiency at least once each calendar year with all weapons carried by the officer." Thus, contrary to Hefley's position, the Village followed the Calumet Park Police Department Rules when it disciplined Hefley when he failed to meet the firearm qualification requirements of his position as a part time police officer.

Fourth, Hefley asserts that he was qualified to use a firearm because he attended a 40 hour course on firearms, as required by the Illinois Peace Officer Firearm Training Act, 50 ILCS

§ 710/2.5. The Act indeed requires officers to undergo classroom training on firearms. However, it also requires all peace officers to undergo an annual range qualification test, 50 ILCS § 710/2.5, and the Calumet Park Police Department Rules incorporate this requirement, Article IX. Thus, Hefley's completion of training, while laudable, did not automatically entitle him to use a firearm in the course of his duties.

Fifth, Hefley contends that the Village discriminated against him by refusing to provide him with ammunition when he took the firearms test. No evidence supports a finding that the failure to give Hefley ammunition is an adverse employment action. In any event, the Village notes that Article IX(A) of the Calumet Park Police Department Rules and Regulations provides for the use of the following weapons when on duty: .38 special revolver; .357 caliber revolver; .9 mm semi-auto weapon; or a .45 ACP caliber semi-auto weapon. Hefley carried a .40 caliber weapon. According to Chief Davis' affidavit, he offered to provide Hefley with a 9 mm Glock weapon (which would have made it possible for Hefley to receive ammunition from the Village) but Hefley declined this offer. Chief Davis also testified that other officers in the department received ammunition because they used weapons on the approved weapon list.

The court declines to read anything sinister into the fact that the Village stocked ammunition solely for the weapons on its approved list. The court also rejects Hefley's contention that the fact that the Village did not force him to use an approved weapon meant that it had to supply him with ammunition suitable for his weapon alone. Indeed, the fact that the defendants allowed Hefley to use his weapon of choice, even though it was not on the approved list, indicates that they were giving him every possible chance to pass the qualification test, yet Hefley still could not pass. In addition, the difficulty of the test does not hinge on who paid for

Hefley's ammunition. Simply put, the defendants' decision not to provide ammunition for a non-approved weapon does not mean that they administered the firearms qualification test unfairly.

Sixth, Hefley stresses that the defendants treated him unfairly because Smith was allowed to re-qualify on his weapon. Hefley, however, has not pointed to any evidence showing that he reapplied for a part time officer position. He asserts generally that he contacted the Village and was told that there were no openings, but the fact remains that no evidence shows that he applied or that he passed the firearms qualifications test. Smith reapplied and – critically – also qualified to use a weapon. Thus, Smith is simply not comparable to Hefley.

This conclusion is not affected by Hefley's claim that Smith's application for re-employment was laden with inaccuracies. If both Smith and Hefley had reapplied and the Village chose not to hire Hefley because of inaccuracies on his application, the existence of the purported inaccuracies on Smith's application would be important. But this is not the issue before the court. Instead, the issue is whether Hefley and Smith were similarly situated where Hefley did not qualify to use a weapon and Smith did.

Seventh, in support of his claim that he was a victim of reverse discrimination, Hefley stresses that the racial composition of the Calumet Park Police Department changed over time and that the number of white officers decreased. The Seventh Circuit has recently held that a plaintiff can use statistical evidence to help establish pretext. *See Hague v. Thompson Distribution Co.*, 436 F.3d 816, 828 (7th Cir. 2006). In this case, however, as discussed above, Hefley has failed to establish a prima facie case so the court need not reach the issue of pretext.

In any event, statistical evidence is not direct evidence of discrimination. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Similarly, it cannot be used by itself

to establish that discrimination occurred because it can "only show a relationship between an employer's decision and the affected employees' traits" as opposed to causation. *Id.*; *Hague v. Thompson Distribution Co.*, 436 F.3d at 828 ("plaintiffs must do more than merely point to race and proclaim: 'Aha! Discrimination'"); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176-77 (7th Cir. 2002) (the fact that the defendant had not hired any African-American employees in two years was at best anecdotal and did not create an inference of discrimination). In other words, because statistical evidence is not tied to individual employee's "roles, responsibilities or salaries," it does not "properly take into account nondiscrimination explanations" and thus "does not permit an inference of discrimination." *Radue v. Kimberly-Clark Corp.*, 219 F.3d at 616-17.

Instead, according to the Seventh Circuit, if an employee relies on the racial composition of a workforce as evidence of discrimination, he must subject all of the employer's decisions to statistical analysis to find out whether race makes a difference. *Hague v. Thompson Distribution Co.*, 436 F.3d at 828. Otherwise, "without knowing how many positions became available during the relevant time frame, the number and race of the candidates applying for those positions, and the candidates' relative qualifications," a racial breakdown of the workforce is "next to worthless." *Id.* Because Hefley focuses only on himself and Smith, his argument based on the racial composition of the Calumet Park Police Force is unavailing.

Eighth, Hefley seems to be arguing that the Village treated him unfairly by requiring him to pass the firearms qualifications test. Like Hefley's statistics argument, this goes to pretext and is thus not properly before the court since Hefley has not established a prima facie case of discrimination. Regardless, state law requires police officers to take a firearms test, and the evidence shows that the Village required each and every one of its officers to take the test.

Moreover, Hefley is not entitled to rewrite the Village's evenhanded standards to meet his own needs and desires. In other words, he cannot avoid summary judgment by contending that the firearms qualification test was too difficult or is unnecessary. *See Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) (the court in an employment discrimination case does not sit as a superpersonnel department "where disappointed applicants or employees can have the merits of the employer's decision replayed to determine best business practices"). Hefley has not pointed to any evidence supporting an inference that the gun policy was a sham, and in fact, the policy was mandated by state law. The Village was also not required to give unsuccessful applicants an unlimited number of opportunities to retake the test and, in the meantime, allow those persons to carry a gun in the course of their duties. In other words, as long as the Village genuinely believed that officers needed to be able to achieve a certain level of proficiency in order to carry a gun (an inference which is amply supported by the record), it was entitled to act on that belief. *See id*. at 867-68.

Ninth, Hefley claims that the Village defamed him by terminating him for "an insufficient reason" and stating that he was "a danger to himself and others" due to his failure to pass the firearms qualification test. The defendants correctly note that Hefley raised his defamation claim for the first time in his motion for summary judgment. Even giving Hefley latitude due to his pro se status, this is too late. Moreover, even if this claim was properly before the court, it would still be dismissed as the court declines to exercise supplemental jurisdiction over a state law claim which is at best tangentially related to Hefley's employment claims. See 28 U.S.C. § 1367.

Finally, the court wraps up by noting that the parties' cross-motions to strike and Hefley's numerous claims of procedural irregularities do not merit discussion as they do not affect the

court's determination regarding the parties' cross-motions for summary judgment. The court also wishes to commend the parties – especially Hefley, who is proceeding pro se – for their comprehensive briefs. Hefley's filings in particular were wide-ranging and advanced every conceivable basis for his position, and the defendants parsed out all of Hefley's arguments and thoroughly addressed them.

**III. Conclusion**

The court appreciates that Hefley is extremely dissatisfied with the defendants' decision to terminate him. Nevertheless, for the above reasons, the defendants' motion for summary judgment [#90] is granted and Hefley's motion [#98] is denied. All other pending motions are stricken. The clerk is directed to enter a Rule 58 judgment and to terminate this case.


DATE:  May 12, 2006                          _____
                                             Blanche M. Manning
                                             United States District Judge